# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50079 | **DATE** | 12/06/2002 |
| **CASE TITLE** | Roser vs. Rockford Park District, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' motion to dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendants' motion to dismiss or for judgment on the pleadings is denied.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

# MEMORANDUM OPINION AND ORDER

Plaintiffs, Steve and Mary Roser, who are husband and wife, have filed a seventeen-count first-amended complaint against defendants, the Rockford Park District ("Park District"), Webbs Norman, Dan Gundrum, Tim Dimke, and Diane Barber. The latter four are sued in their individual capacities as the Park District's Executive Director, Senior Manager for Recreational Facilities, Assistant Executive Director, and Director of Human Resources, respectively. The Rosers allege various claims under 42 U.S.C. § 1983 against all defendants for violations of their First and Fourteenth Amendment rights, and Steve also alleges a state law breach of contract claim against the Park District. Jurisdiction and venue are proper based on 28 U.S.C. §§ 1331, 1367, 1391. Before the court is defendants' motion to dismiss for failure to state a claim, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

In their due process claims against the individual defendants (Counts I-IV and X-XIII), the Rosers essentially allege they were either terminated (Steve) or forced to resign (Mary) from their jobs with the Park District without receiving adequate procedural protection. These claims involve a two-step inquiry: first the court must decide if the Rosers had protected property interests in their positions with the Park District – that is, whether they had "legitimate claims of entitlement" to their jobs; if so, then the court turns to the question of whether they received the process they were due. See Lalvani v. Cook County, 269 F.3d 785, 791 (7th Cir. 2001). However, it seems both sides have confused these issues. Defendants insist, especially in their reply brief (p. 7), they are challenging only the first prong of this test. And yet the whole of their analysis is spent discussing cases that stand for the idea that the mere denial of state-mandated procedures is not by itself a denial of constitutional due process – a point which, as defendants' cases themselves make clear, goes only to the *second* prong of the test. See Martin v. Shawano-Gresham Sch. Dist., 295 F.3d 701, 705-06 (7th Cir. 2002), cert. denied, – S. Ct. –, 2002 WL 31246435 (Dec. 2, 2002); Wallace v. Tilley, 41 F.3d 296, 299, 301 (7th Cir. 1994). The Rosers apparently follow defendants' lead and discuss only what sort of process was due them under the balancing test of Mathews v. Eldridge, 424 U.S. 319 (1976). As the court sees it, all of this is beside the point. The Rosers specifically plead that, as employees of the Park District, they were covered by the Illinois Park System Civil Service Act, 70 ILCS 1210/1 et seq. ("Park System Act"). (Am. Compl. ¶¶ 32-34) As such, they allege, they could not be "removed or discharged, or suspended for a period of more than thirty days, *except for cause* . . . ." Id. § 1210/12 (emphasis added). A legitimate claim of entitlement to continued state employment is "typically rooted in statutory or contractual language indicating that the employee cannot be terminated but for cause." Lalvani, 269 F.3d at 791. That is exactly the sort of language found in the Park System Act, as just quoted and emphasized. The court thus finds the Rosers have adequately alleged protected property interests in their jobs with the Park District; any factual dispute about what process they were due, or whether they received it, is better left for another day.

The Rosers also allege these same due process claims against the Park District under Monell v. Department of Social Services, 436 U.S. 658 (1978) (Counts V and XIV). With respect to these claims, the Park District argues the Rosers have not adequately alleged a custom or policy. In their complaint, however, the Rosers specifically plead that the Park District "terminated numerous employees covered by the [Park System Act] over the course of years without affording them the procedural protections set forth in said Act," misrepresented that its employees were "at will," and "engaged in a custom, practice and policy of denying employees their Fourteenth Amendment rights by failing to follow the [Park System Act]." (Am. Compl. Count V ¶¶ 73-76) Although the court has its doubts about how the Rosers will prove such allegations, it finds they are sufficient to state a custom or policy claim under Monell for purposes of a Rule 12(b)(6) motion.

Next, the Rosers allege three of the individual defendants – Norman, Gundrum, and Dimke – retaliated against them for exercising their rights under the First Amendment (Counts VI-VIII and XV-XVII). This requires them to allege that their speech or conduct was (1) constitutionally protected and (2) a substantial or motivating factor in defendants' challenged actions. See Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002). In August 2000, Steve was disciplined for his improper use of the interoffice mail. As part of that disciplinary action, the Rosers claim these three defendants conditioned Steve's continued employment with the Park District on Mary resigning from her position because she had previously brought a complaint of sexual harassment against another employee at the Park District and accused Dimke of being negligent in his investigation of that complaint as well as being indirectly involved in the theft of some $50,000 - $70,000 from the Park District. Then they claim these defendants decided to fire Steve anyway a few months later (after reinstating Mary) because he sent a letter to Norman in which he essentially accused the three of them of concocting the above ploy to get back at Mary. In other words, the Rosers allege these defendants forced Mary to resign as part of Steve's disciplinary action in retaliation for her prior speech activities and then fired Steve in retaliation for calling them on their retaliation against his wife. Assuming their truth, as the court of course must on a motion to dismiss, these allegations more than adequately establish the Rosers' speech was a motivating factor in the adverse employment actions they each suffered.[2]

Finally, Steve alleges a breach of contract claim based on an agreement he signed to resolve his disciplinary action in August 2000. The agreement, co-signed by Gundrum and Dimke, essentially required Steve to fulfill four conditions to retain his employment with the Park District (one of which was Mary's resignation). Despite Steve's full compliance with all of the conditions, Steve claims the Park District decided to reinstate Mary and then fire him. Because it fired him for the same reasons that led to his disciplinary action, which were supposed to be settled in the agreement, Steve believes the Park District has breached the agreement. Illinois case law supports this theory. In Zaniecki v. P.A. Bergner & Co., 493 N.E.2d 419 (Ill. App. Ct. 1986), abrogated on other grounds by Lanning v. Morris Mobile Meals, Inc., 720 N.E.2d 1128 (Ill. App. Ct. 1999), the plaintiff claimed that, after the defendant had fired him for reporting the theft of material from the defendant's store, the defendant agreed to reinstate him if he passed a polygraph test showing he was not responsible for the theft. The plaintiff eventually took and passed the test, but the defendant still refused to rehire him. Under these circumstances, the court held that the plaintiff had adequately pled the breach of an oral contract. Id. at 422. So too here. A reasonable reading of the agreement (which may be considered by the court on defendants' motion to dismiss as it is referenced in and attached to the complaint, see Fed. R. Civ. P. 10(c)) is that the Park District agreed not to fire Steve for the misconduct recited in the agreement if Steve complied with the stated conditions. Steve alleges he fulfilled those conditions but the Park District fired him anyway, citing the same misconduct that originally led to him being disciplined. Under Zaniecki, these facts state a claim for breach of contract.

For the reasons stated above, defendants' motion to dismiss is denied.

---

[1] Defendants alternatively cast their motion as one for judgment on the pleadings under Rule 12(c). But because they have yet to file an answer, Rule 12(c) simply does not apply.

[2] Although defendants do not challenge the first prong of the retaliation test, it may be debatable whether Mary's internal complaint about sexual harassment was a matter of public concern for purposes of a First Amendment retaliation claim. See Kokkinis v. Ivkovich, 185 F.3d 840, 844-45 (7th Cir. 1999). The court also notes the complaint fails to indicate how, if at all, Norman was involved in the disciplinary action against Steve (and by implication the retaliation against Mary), which appears to have been handled solely by Gundrum and Dimke. (Am. Compl. ¶ 18) It also does not indicate why Gundrum would want to retaliate on behalf of Dimke, as Mary had not previously accused *Gundrum* of any wrongdoing. Finally, the complaint does not explain how, if at all, Gundrum and Dimke were involved in the decision to fire Steve (in retaliation for sending the letter to Norman), which appears to have been handled exclusively by Norman. (Id. ¶ 28 & Exh. C) Nevertheless, none of the defendants have raised any of these issues, so the court will not pursue them any further.